**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DEBJO SALES, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**HOUGHTON MIFFLIN HARCOURT PUBLISHING CO.,**<br><br>*Defendant.* | **Civil Action No. 14-4657**<br><br>**OPINION** |

ARLEO, UNITED STATES DISTRICT JUDGE

This matter comes before this Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 34]. The Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the motion is **GRANTED**.

   **I.   FACTS**

This dispute concerns a textbook manufacturer's policy requiring that its textbooks and other educational materials must be shipped by the manufacturer, a policy stringently objected to by a delivery service. The manufacturer here, Defendant Houghton Mifflin Harcourt Publishing Company ("Defendant"), sells and ships educational materials throughout the United States, including in New Jersey, and controls approximately 38% of the market share in the national K-12 educational material market. Am. Compl. at 1 ¶ 2, 4 ¶ 4, 5 ¶ 5. The delivery service, Plaintiff

1

Debjo Sales, LLC ("Plaintiff"), was founded in 2007 with the goal of entering into agreements with school districts to pick up and deliver textbooks ordered by such districts from Defendant. Id. at 2 ¶ 3.

It is unclear whether Plaintiff succeeded. Plaintiff had agreements with multiple school districts in New Jersey to pick up school books from Defendant and deliver them to the school districts. Id. at 6 ¶ 2. Plaintiff was also recently awarded "a Time and Materials contract through Educational Data Services, Inc., for 650 school districts in New Jersey and 150 school districts in New York," which approved Plaintiff's services for use by school districts throughout New Jersey and New York. Id. at 4 ¶ 2. However, whether Plaintiff was paid for these agreements, the agreements' terms, when these agreements began, and whether these agreements constituted enforceable contracts is never stated in the Amended Complaint.

The disputed policy change was implemented by Defendant on or around July 3, 2014. Id. at 2 ¶ 5. Beginning on that date, Defendant required all orders under $500,000 to be shipped by Defendant and charged a 5% handling fee for orders over $500,000 that were picked up by customers. Id. This allegedly prevents schools from negotiating the best price for delivery of textbooks or from choosing different modes of delivery when purchasing Defendant's books. Id. at 2 ¶ 6, 4 ¶ 3. Defendant was able to charge 10.5% of the total order when it shipping its books, even though usual shipping prices are approximately 5% for this service. Id. at 3 ¶ 7.

Defendant's policy change "caused damage" to Plaintiff's agreements with at least twenty-three schools, which Plaintiff lists in its Amended Complaint. Id. at 7 ¶ 3. Plaintiff also alleges that some agreements with school districts were "nullified" or "rendered nullities" by Defendant's policy change. Id. at 3 ¶ 8, 5 ¶ 6. Other than to say that several of its agreements were damaged or nullified, Plaintiff does not explain the effect of Defendant's policy change. On at least one

2

occasion, a school district wrote Defendant and informed it that Plaintiff was to deliver its purchases.  Id. at 6 ¶ 2.

Plaintiff now sues on four counts: illegal tying in violation of the Sherman Act § 1,[1] intentional interference with contract, unjust enrichment, and tortious interference with contractual relations.  Defendant moves to dismiss these counts as inadequately pled.  Because Plaintiff has failed to plead adequate facts to state a claim under any of these causes of action, the Court dismisses Plaintiff's Amended Complaint without prejudice to Plaintiff's right to refile.

## II.   STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss on the pleadings, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  Id.

The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

---

[1] Though Plaintiff also mentions N.J.S.A. 56:9-3 in its pleading, the New Jersey statute's language is virtually identical to the first statement of the Sherman Act, and each party's briefing analyzes Plaintiff's claims only under Section 1 of the Sherman Act.  This Court therefore analyzes this count solely under Section 1 of the Sherman Act, 15 U.S.C. § 1.

The Court must here detour from its description of routine and universally-accepted pleading standards to address Plaintiff's reliance on the rejected "no set of facts" pleading standard of Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Conley was explicitly abrogated by Twombly, which stated that Conley's "no set of facts" statement "has earned its retirement" and "is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ." Twombly, 550 U.S. at 563. Plaintiff makes much of the fact that this is an antitrust case, so the pleading standard should be lower. But Twombly was an antitrust case. Id. Under current law, Plaintiff must plead facts sufficient to render a cause of action plausible. Id. at 557.

### III.  ANALYSIS

#### A. Antitrust Violation (Count I)

##### 1. Antitrust Standing

Private parties may only bring antitrust claims if they have antitrust standing. Under current law, competitors or consumers of the defendant in the relevant market have antitrust standing. See Ethypharm S.A. Fr. v. Abbott Labs., 707 F.3d 223, 233 (3d Cir. 2013) (dismissing claim for lack of standing because "antitrust injury . . . is limited to consumers and competitors in the restrained market and to those whose injuries are the means by which the defendants seek to achieve their anticompetitive ends") (citation and internal quotation marks omitted).

Defendant argues that Plaintiff has failed to allege facts sufficient to show that it is a competitor or consumer. Plaintiff argues that it was a competitor because it had "contractual agreements" which were nullified or damaged by Defendant's policy change, and its business model of delivery service for educational materials was rendered inoperable by Defendant's policy change. Am. Compl. at 3 ¶ 8, 5 ¶ 6, 6 ¶ 2.

In Barton & Pittinos, the Third Circuit amalgamated the Supreme Court's analysis in Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519 (1983), into a formulation of factors that are relevant for this Court to consider when antitrust standing is challenged:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

Barton & Pittinos, Inc. v. SmithKline Beecham Corp., 118 F.3d 178, 181 (3d Cir. 1997). Considering these factors, the Court finds Plaintiff has antitrust standing.

Under factor one, although Plaintiff has demonstrated a causal connection between the antitrust violation and harm to Plaintiff—the change in policy substantially decreased the value proposition of Plaintiff's service—it has failed adequately to plead facts showing that Defendant intended to cause the harm. The second factor weighs strongly in favor of Plaintiff. Using market power in one product to preclude competition in a distinct product to the disadvantage of the consumer is precisely the concern antitrust tying restrictions are designed to address. Directness of injury is less clear. The chain of causation between the policy and harm to Plaintiff is not attenuated, but Plaintiff's failure adequately to allege that enforceable contracts existed before Defendant's policy change and were invalidated by that change render any injury somewhat speculative. Factor four slightly supports Plaintiff, as there are unlikely to be more direct victims of a delivery policy change than Plaintiff, a company which specializes in delivery. Finally, the potential for duplicative recovery here, though present due to the alleged harm to school districts, does not excessively complicate this dispute, and so does not weigh strongly in either direction.

5

On balance, the Court finds that the Barton factors indicate that Plaintiff has antitrust standing due to the combination of the causal connection of harm under the theory alleged, the type of injury of which Plaintiff complains, and the lack of powerful mitigating factors counseling a contrary finding.

Defendant argues that Plaintiff does not have antitrust standing because it failed to show injury to competition rather than merely to a competitor. The Court again disagrees.

Defendant cites to Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc. for support. 429 U.S. 477, 488 (1977). But Brunswick was decided on a drastically different fact pattern. There, the disputed conduct increased competition in bowling centers, and a competing bowling center sued to recover lost profits due to the increased competition. Id. at 488. On those facts, the plaintiff did not have antitrust standing.

This case is quite different. Plaintiff does not allege a pro-competitive action that harms only it. The alleged conduct here—prohibiting or imposing high fees on third-party shipping—has a plainly anticompetitive effect, and Defendant does not argue otherwise. This dispute is one for which antitrust laws were made: preventing the tying of unrelated products by a market leader to decrease competition. As such, Plaintiff has antitrust standing.

### 2. Tying

Though Plaintiff has standing to bring an antitrust claim, it still must plead facts sufficient to state a claim in order to survive a motion to dismiss. The antitrust claim here alleges that Defendant tied distinct products or services, in violation of the Sherman Act, 15 U.S.C. § 1. To prove a per se tying violation, Plaintiff must allege facts plausibly showing that: "(1) a defendant seller ties two distinct products; (2) the seller possesses market power in the tying product market; and (3) a substantial amount of interstate commerce is affected . . . ." Town Sound & Custom

6

Tops, Inc. v. Chrysler Motors Corp., 959 F.2d 468, 477 (3d Cir. 1992); see also Marchese v. Cablevision Sys. Corp., No. 10-2190, 2012 WL 78205, at *2 (D.N.J. Jan. 9, 2012). Alternatively, Plaintiff may rely on the rule of reason by replacing the second prong above—market power—with proof that the defendant "unreasonably restrained competition in the tied product market." Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 511 (3d Cir. 1998). In its threadbare Amended Complaint, Plaintiff fails adequately to plead any of these components.[2]

### a. Distinct Products

Defendant argues that no alleged facts indicate that K-12 educational materials and delivery of the same are separate and distinct articles of commerce. The Court agrees.

Tying products (or services) together only violates antitrust law if the products are separate and distinct. Products are distinct where there is sufficient demand for each product separately to make it efficient for a firm to provide the products separately. See Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 462 (1992) ("For service and parts to be considered two distinct products, there must be sufficient consumer demand so that it is efficient for a firm to

---

[2] As a preliminary matter, the Court rejects Defendant's argument that control over delivery of one's own product can never violate antitrust tying laws. The cases Defendant cites do not support that proposition. Rather, they simply hold that a company must have an economic interest in the alleged tie to violate tying laws. See Crawford Transp. Co. v. Chrysler Corp., 338 F.2d 934, 939 (6th Cir. 1964) (Chrysler did not violate antitrust tying laws by requiring its cars to be shipped through approved shipping companies because it had no financial interest in and received no profit from the shipping companies); Venzie Corp. v. U.S. Mineral Prods. Co., 521 F.2d 1309, 1317-18 (3d Cir. 1975) ("The absence of a direct interest in the tied product market leaves open the possibility of a nonpredatory justification for requiring sales only through Armstrong and distinguishes this situation from the solely anti-competitive arrangements which have been branded as per se antitrust violations."); Carl Sandburg Vill. Condo. Ass'n No. 1 v. First Condo. Dev. Co., 758 F.2d 203, 207 (7th Cir. 1985) ("[A]n illegal tying arrangement will not be found where the alleged tying company has absolutely no economic interest in the sales of the tied seller, whose products are favored by the tie-in."). Here, by contrast, Defendant has an economic interest. Defendant allegedly receives substantial remuneration from its policy—either a 10.5% fee for direct delivery or a 5% fee if a third party is used. Am. Compl. at 2 ¶ 5, 3 ¶ 7. Delivery of one's own product is not categorically exempt from antitrust laws.

provide service separately from parts."); Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 21-22 (1984) (there must be "sufficient demand for the purchase of [the tied product] separate from [the tying product] to identify a distinct product market in which it is efficient to offer [the tied product] separately from [the tying product]."). In this case, therefore, Plaintiff must allege facts sufficient to show that consumer demand for delivery of educational materials makes it efficient to separate the materials from their delivery.

Plaintiff's only relevant factual allegation is that at least one school district told Defendant that Plaintiff would deliver the books. That is not enough. Alone, that does not show consumer demand, much less sufficient demand to make separation of the materials and their delivery efficient. Plaintiff also alleges it had agreements with school districts to pick up and drop off books, Am. Compl. at 6 ¶ 2, but the content and number of these agreements is left to the imagination, so these allegations do not show sufficient consumer demand for delivery of the textbooks. Plaintiff has thus not adequately alleged facts demonstrating that K-12 educational materials and their delivery are separate and distinct products.[3]

### b. Market Power or Unreasonable Restraint of Competition

Defendant argues that Plaintiff has failed adequately to plead that Defendant has market power because (1) Defendant's market share is insufficient, as a matter of law, to show market power in the national K-12 educational materials market and (2) Plaintiff's alleged market is facially implausible.

### i. Market Share

---

[3] Any renewed pleading must provide facts which show consumer demand for delivery of educational materials independent from the materials' sale, such that it would be efficient for a firm to separate purchase of educational materials from their delivery.

Defendant's first argument, that 38% is not enough market share to create market power, is unpersuasive. Defendant cites to several cases which indicate that 38% market share is insufficient to demonstrate a per se antitrust violation. See Times-Picayune Pub. Co. v. U.S., 345 U.S. 594, 612-13 (1953) (newspaper's 33%-40% share of advertising market insufficient to invoke per se rule); Greene Cnty. Mem'l Park v. Behm Funeral Homes, Inc., 797 F. Supp. 1276, 1287 (W.D. Pa. 1992) (funeral home with 33%-43% of alleged market insufficient to constitute per se violation). But these cases were not decided on a motion to dismiss. Because the effect of market share on market power varies from industry to industry, this Court cannot conclude at this stage that 38% market share is insufficient to plead market power. See United States v. Columbia Steel Co., 334 U.S. 495, 528 (1948) ("The relative effect of percentage command of a market varies with the setting in which that factor is placed."). Taking all inferences in favor of the Plaintiff, the Court finds that Plaintiff's allegation that Defendant has 38% market share is sufficient plausibly to infer that Defendant has market power here.[4]

### ii. Market Definition

Plaintiff's allegation of 38% market share, however, means nothing if the market is not plausibly defined. The Amended Complaint does not provide facts sufficient to make a K-12 educational materials market plausible.

When considering the relevant product market, courts examine whether products are reasonably interchangeable by the consumer for the same purpose. Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 482 (1992) (considering "commercial realities" and reasonable interchangeability to determine the relevant market); United States v. Grinnell Corp.,

---

[4] Though Defendant also challenges the accuracy of Plaintiff's statistics concerning Defendant's market share, this is a factual dispute, and so is misplaced at this stage of the case.

384 U.S. 563, 584 (1966) (using reasonable interchangeability to distinguish central station monitoring from watchmen services or audible alarms); United States v. E. I. du Pont de Nemours & Co., 351 U.S. 377, 404 (1956) (stating that "[t]he market is composed of products that have reasonable interchangeability").

Plaintiff's alleged product market of K-12 educational materials is facially implausible without additional facts. A kindergarten textbook is not interchangeable with a high school textbook. The Court does not here conclude that this product market is impossible—it is conceivable that school districts purchase these materials as a unit and that consistent practice indicates that demand for these products is not split into discrete units based on educational level. Plaintiff, however, has failed to allege any facts sufficient to support a finding of a K-12 educational materials market.

Plaintiff's national geographic market is also unsupported by any alleged facts. When considering the relevant geographic market, courts identify "the area in which a potential buyer may rationally look for the goods or services he or she seeks." Tunis Bros. Co. v. Ford Motor Co., 952 F.2d 715, 726 (3d Cir. 1991); see also Grinnell, 384 U.S. at 570-71.

Here, there are no alleged facts indicating that school districts look to publishers across the nation when purchasing educational materials. Again, the Court does not conclude such a market is impossible, only that Plaintiff has failed to plead any facts providing support for Plaintiff's geographic market definition.

Without a plausible relevant market (both geographic and product), the Court cannot determine that Plaintiff alleges that Defendant has market power.

    **iii. Unreasonable Restraint on Competition**

Though Plaintiff has not pled market power, its claim may proceed under rule of reason analysis if Plaintiff has adequately alleged that Defendant unreasonably restrained competition. See Brokerage Concepts, Inc., 140 F.3d 494, 511 (3d Cir. 1998). Plaintiff does not so plead. Indeed, the Amended Complaint contains no facts regarding the reasonableness of Defendant's policy change. In the absence of any facts showing an unreasonable restraint on competition, Plaintiff cannot rely on rule of reason analysis here to survive a motion to dismiss.

### c. Substantial Effect on Interstate Commerce

Defendant also argues that Plaintiff has failed sufficiently to allege a substantial effect on interstate commerce. The Court agrees.

In tying cases, "[P]laintiffs [must] show a substantial and adverse effect on commerce." Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 72 (3d Cir. 1983). "[S]ubstantiality of effect . . . is to be viewed on a case-by-case, practical economic basis, from the perspective of whether the local activity has a significant impact on competition in commerce and whether the commerce so affected is substantial in volume." Id. (quoting Harold Friedman, Inc. v. Thorofare Markets Inc., 587 F.2d 127, 132 (3d Cir. 1978)).

The only relevant allegation in the Amended Complaint is that Defendant is a national company that ships textbooks throughout the nation. Am. Compl. at 5 ¶ 5. Though this implicates interstate commerce, it does not show a "substantial and adverse effect" on such commerce. Nor does Plaintiff's allegation concerning Defendant's market share satisfy the substantial-effects pleading requirement. The pleadings do not aver the size of the textbook delivery service market or even the market for K-12 educational materials generally. The Court declines to speculate in the absence of a pleading that provides some basis from which to infer a substantial effect on interstate commerce. Plaintiff therefore fails adequately to plead that Defendant's actions have a substantial effect on interstate commerce.

11

For the reasons mentioned above—Plaintiff's failure to plead facts adequate plausibly to show (1) distinct products, (2) market power over the relevant market or unreasonable restraint on competition in violation of the rule of reason, and (3) a substantial effect on interstate commerce—Plaintiff's Amended Complaint is dismissed without prejudice as to Count I.

### B. Tortious Interference with Contractual Relationships (Counts II and IV)[5]

To plead tortious interference with contractual relations, Plaintiff must provide facts sufficient reasonably to infer: "(1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." Dello Russo v. Nagel, 358 N.J. Super. 254, 268 (App. Div. 2003). Plaintiff does not do so here.

#### 1. Contractual Relationships

Plaintiff fails to allege valid contracts with sufficient specificity to satisfy its burden to plead facts showing actual interference with a contract.

This case is similar to Plasticware, LLC v. Flint Hills Res., LP, 852 F. Supp. 2d 398 (S.D.N.Y 2012). In Plasticware, the plaintiff alleged it had "agreements" with its customers, without providing specifics about any of those agreements. Id. at 404. The court held that plaintiff's failure to "allege[] adequate details about a specific contract" justified dismissal of the claim for tortious interference with contractual relationships. Id. Many other cases agree. See Only v. Ascent Media Grp., LLC, No. 06-2123, 2006 WL 2865492, at *8 (D.N.J. Oct. 5, 2006)

---

[5] Count II, "intentional interference with contract," and Count IV, "tortious interference with contract," are pled almost identically and, insofar as is relevant to this opinion, appear to apply the same law. See Norwood-Jeb, L.L.C. v. N. River Mews Assocs., L.L.C., No. 1259-07T3, 2009 WL 1010963, at *9 (N.J. Super. App. Div. Apr. 15, 2009) (analyzing an "intentional interference with contract" claim under "tortious interference with contractual rights"). Plaintiff does not contest Defendant's characterization that these counts are identical, in law and in fact, so the Court analysis applies to both.

(general allegations that plaintiff had valid contractual relationships were insufficient to identify existing contracts with required specificity to state a claim for tortious interference under New Jersey law); Commerce Ins. Servs. v. Szczurek, No. 05-3565, 2006 U.S. Dist. LEXIS 515, at *26-27 (D.N.J. Jan. 6, 2006) (dismissing a claim for tortious interference when complaint failed to identify existing contracts).

Here too, Plaintiff has alleged only that it had "contractual agreements" or "agreements" with various entities. Plaintiff provides a list of twenty-three school districts with which it had "agreements," but does not provide adequate specifics concerning these agreements. As an example of this deficiency, it is not clear whether any of these agreements were actual paying contracts. Plaintiff also fails to identify the date any of these agreements became effective, so it is unclear whether any of these agreements predate the policy change. Given the ambiguity of Plaintiff's Amended Complaint, the Court finds that Plaintiff has failed to identify valid relevant contracts with reasonable specificity.

### 2. Intentionality

Plaintiff also fails to provide any facts plausibly indicating that Defendant changed its policy to harm Plaintiff intentionally.

Interference is intentional when "the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Dello Russo, 358 N.J. Super. at 268; Cargill Global Trading v. Applied Dev. Co., 706 F. Supp. 2d 563, 575 (D.N.J. 2010). Plaintiff's only relevant allegation is that Defendant's intent to harm Plaintiff is "evidenced by the fact" that the change in policy "was enacted at the commencement of plaintiff's busiest shipping season of the year." Am. Compl. at 8 ¶ 4. It is not plausible to infer that Defendant

13

intended to hurt Plaintiff based solely on the fact that the timing of the disputed policy change hurt Plaintiff. This element is not sufficiently pled.

### 3. Lack of Justification or Excuse

In the context of intentional interference with contractual relationships, Plaintiff must allege malice—i.e. intentionally inflicting harm without justification or excuse. See Lamorte Burns & Co. v. Walters, 167 N.J. 285, 306 (2001). A "bare recital that Defendants' alleged interference was carried out with 'malice' falls short" of the required allegations to sustain a claim under this count. Mu Sigma, Inc. v. Affine, Inc., No. 12-1323, 2013 WL 3772724, at *5 (D.N.J. July 17, 2013) (citation omitted). Thus, irrespective of other deficiencies, Plaintiff's allegations here fail unless Plaintiff alleges that Defendant had no justification or excuse for its policy change.

Plaintiff makes no such allegation. Defendant, for its part, identifies several justifications for its policy change—including unrecovered costs due to inept external shipping companies. Because Plaintiff does not plead that Defendant changed its policy without any justification, this claim must be dismissed.

The Court dismisses Counts II and IV without prejudice.

### C. Unjust Enrichment (Count III)

To plead unjust enrichment, Plaintiff "must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). Plaintiff must also show that Plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id. Plaintiff's Amended Complaint fails to plead these requirements.

Under New Jersey law, unjust enrichment cannot provide an independent tort claim. Castro v. NYT Television, 370 N.J. Super. 282, 299 (App. Div. 2004) ("[T]he role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion."); Nelson v. Xacta 3000 Inc., No. 08-5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) ("New Jersey law does not recognize unjust enrichment as an independent tort cause of action"). Thus, the only basis on which Plaintiff could theoretically rely for an independent cause of action for unjust enrichment is a contractual relationship between the Plaintiff and Defendant. Plaintiff does not allege any such relationship here. Facially, then, the unjust enrichment claim in this case has no basis under New Jersey law and must be dismissed.

The unjust enrichment claim must be dismissed on yet another basis. In an unjust enrichment claim, the plaintiff must be the party who provides the benefit to the defendant. See Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 496 (D.N.J. 1998) (unjust enrichment claim failed to state a claim "because [plaintiff] had not alleged (nor could it prove) that it conferred a benefit on defendants"). The benefit that Defendant allegedly received from its change of policy was approximately 10% in delivery fees. Plaintiff did not pay that money to Defendant, nor does it confer any benefit upon Defendant in any meaningful way. Plaintiff may be injured here, but there is no doubt that, as pled, Plaintiff does not confer any benefit on Defendant. Because of these deficiencies, the Court dismisses Plaintiff's unjust enrichment claim without prejudice to Plaintiff's right to refile.

IV. **CONCLUSION**

For the foregoing reasons, this Court dismisses Plaintiff's Amended Complaint in its entirety without prejudice to Plaintiff's right to refile within twenty-one days. Plaintiff is on notice of the defects with its current complaint. If these defects are not remedied in any subsequent

pleading, the Court will deny further amendment as futile.  An appropriate Order accompanies this Opinion.

Date: April 29, 2015                                         /s/ *Madeline Cox Arleo*
                                                             **Hon. Madeline Cox Arleo**
                                                             **UNITED STATES DISTRICT JUDGE**